HENRY F. DREEVES v. SAMUEL SCHOENBERG.

Submitted December 7, 1911—Decided March 14, 1912.

Where a landlord who had assumed control of the general entrances and stairways of a tenement house was notified of the danger of the water pipes freezing by leaving the hallway doors open, and thereafter the pipes did freeze as a result of the failure to keep the said doors closed, causing damage to the plaintiff, who was a tenant occupying the store upon the ground floor—*Held,* that the landlord was liable for the damage thus caused.

---

On appeal from Second District Court of Jersey City.

Before Justices TRENCHARD, MINTURN and KALISCH.

For the plaintiff, *Robert S. Hudspeth.*

For the defendant, *Charles H. Burtis.*

The opinion of the court was delivered by

MINTURN, J.   The defendant, Schoenberg, was the owner of premises, consisting of a three-story frame tenement building, in Jersey City, in which was a store occupied by the plaintiff as a tenant.   The floor above the store was occupied by another tenant, one Albanesius.

On February 10th, 1910, water was found to be flowing from frozen pipes out under the door of the plaintiff's store, and an examination disclosed the fact that the water had frozen in the pipes in the hallway, resulting in the bursting of the pipes, from which the water flowed, damaging the plaintiff's property in the store, to recover for which damage he brought one suit against Albanesius, the tenant, and another against the defendant.

The trial court ordered a judgment of nonsuit entered in the former case, and gave judgment for the plaintiff in the latter, and the propriety of the latter judgment is before us for review.

The trial court found from the testimony that the damage in question was caused by the bursting of the water pipes which had frozen by reason of the negligence of the landlord, who had allowed the doors and transom in the main hallway to remain open on the day and night upon which the freezing occurred and the injury took place; that the landlord had previously been notified of the imminence of such danger if the precautionary measure were not adopted of keeping the hallway entrances closed when not in use; that he had also been notified that the pipes had previously been frozen from similar neglect, and that, notwithstanding these precautionary warnings, he neglected upon the day and night in question to keep the hallway door and transom closed, and that as a result the pipes were frozen and burst causing the damage, which forms the basis for this suit.

The trial court also found that the landlord retained control of the hallway doors and the hallway as a general entrance for the tenants of the building, and that the tenants had no control of the water pipes' or water-supply; that the landlord on previous occasions had, upon complaint of similar conditions

existing, gone with Albanesius and closed the hallway doors, and that, upon the occasion in question, upon being notified of the trouble, had attempted to shut off the water, and, failing in this, had employed a plumber to do so, and later in the day thawed out the pipes and repaired the leaks.

Since the adjudications of this court in *Gillvon* v. *Reilly,* 21 *Vroom* 26, and *Gleason* v. *Boehm,* 29 *Id.* 475, and the adjudication in *Siggins* v. *McGill,* 43 *Id.* 263, by the Court of Errors and Appeals, the rule has been settled that where a landlord retains possession and control of hallways and stairways for the common use of his tenants, he is under the responsibility of a general owner of land who invites others to come upon it, and is bound to see that reasonable care is exercised to have such common entrance reasonably safe for the use he invites others to make of them.

In the case at bar, the trial court found as a fact that the landlord not only exercised control over the hallway, but also that on previous occasions he had been notified of the danger likely to ensue by allowing the doors to remain open during a severe cold spell. As custodian of the hallway, he was, therefore, put upon his guard by notice and his duty under the circumstances must be held to be commensurate with the obligation which he thus assumed and voluntarily undertook.

In *Breece* v. *Mersfelder,* 19 *N. J. L. J.* 172 (cited in 4 *N. J. Dig.* 7867), this court based its determination of the liability of the landlord upon the facts of his assumption of control, and notice of the defect which was the proximate cause of the injury; and it may be said generally that those considerations furnish the rationale upon which his liability is predicated and which warrant a departure from the common law rule of non-liability in the absence of a covenant to repair.

These factors of liability having been found by the trial court to exist in the case at bar, the judgment of that court will be affirmed.